**ZACHARY WALKER,** WSBA No. 46049
ZWALKER@KELRUN.COM
**SCOTT J. ALDWORTH,** WSBA No. 60949
SALDWORTH@KELRUN.COM
Kell, Alterman & Runstein, L.L.P.
520 S.W. Yamhill, Suite 600
Portland, OR 97204
Telephone: 503/222-3531
Fax: 503/227-2980
Attorneys for Plaintiffs

The Honorable Tiffany M. Cartwright

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| MARIE GOODMAN and EUGENE MCNERNEY,<br><br>Plaintiffs,<br><br>v.<br><br>COOLVESTMENT LLC dba DAYS INN & SUITES, an Oregon limited liability company; and NIRAV PATEL, individually,<br><br>Defendants. | Case No. 3:23-CV-05456-BJR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendants Coolvestment LLC ("Defendant Coolvestment") and Nirav Patel ("Defendant Patel") (collectively, "Defendants") have moved for summary judgment despite the presence of numerous factual disputes that must be resolved by a jury. Defendants have crafted their own narrative based on a single out-of-context statement from Plaintiff Eugene McNerney's ("Plaintiff McNerney") deposition and ask the Court to accept this narrative as gospel. They do so despite the fact that this narrative is directly contradicted not only by Plaintiffs, but by Defendants' own position in the case up until now. Because Defendants' factual assertions are

Page 1 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

heavily disputed and numerous questions of fact exist, summary judgment is inappropriate and Defendants' motion must be denied.

## Background Facts

Plaintiff Marie Goodman ("Plaintiff Goodman") has brought a claim for disability discrimination based on Defendants' insistence that Plaintiffs pay a pet fee for Plaintiff Goodman's service dog.[1] There are very few undisputed facts in this case. The parties agree that, on November 25, 2022, Plaintiffs arrived at the Days Inn hotel operated by Defendant Coolvestment to check in for a two-night reservation. Plaintiffs interacted with Defendant Patel, who was working the front desk at the time. An argument ensued and Defendant Patel called the police on Plaintiffs. Plaintiff Goodman contacted Expedia for a refund of the payment she had already made for the hotel room and, once this was approved, Plaintiffs left the hotel. Everything else about this incident, which forms the basis of Plaintiff Goodman's claim, is a disputed issue of fact.

Defendants claim that the conflict between Plaintiffs and Defendant Patel arose when Plaintiff Goodman misunderstood Defendant's Registration Form, which referenced a nightly pet fee. Defendant's Motion, at 4. Defendants claim that Defendant Patel quickly clarified that Plaintiffs would not be charged a pet fee for Plaintiff Goodman's service animal, but Plaintiffs continued to insist they were being charged a pet fee and an argument ensued that led to Defendant Patel calling the police. *Id*. at 4-5.

As an initial matter, it bears noting that Defendants' current narrative is not only disputed by Plaintiffs, but is directly contradicted by Defendants' own pleadings and testimony in this case. In their counterclaims, Defendants alleged that the argument between Plaintiffs and

---

[1] The parties have mutually agreed to dismiss Plaintiff McNerney's claims against Defendants, Plaintiff Goodman's claim against Defendant Patel, and Defendants' counterclaims against Plaintiffs. As such, Defendants' Motion is moot to the extent it relates to Plaintiffs' aiding and abetting claim against Defendant Patel and Plaintiff McNerney's claims. The only remaining claim is Plaintiff Goodman's claim against Defendant Coolvestment and Defendants' request for summary judgment on that claim is all that is before the Court.

Page 2 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
  SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Defendant Patel began when Defendant Patel informed them that they would need to pay an incidental deposit. Defendants/Counterclaimants' First Amended Answer and Counterclaims, Dkt. 17, ¶ 34. Defendants alleged that Plaintiffs refused to pay this incidental deposit and began yelling at Defendant Patel and making offensive statements like "Go back to your country." *Id*. at ¶¶ 35-36.[2] Defendants' counterclaims make no mention of the Registration Form or disagreement about whether a pet fee was being charged. Likewise, Defendant Patel also testified that the dispute was entirely about the incidental deposit:

> Q. And how did the shouting start?
>
> A. I don't exactly – I can't say. But I can say that that was refused to the incidental. And I tried to explain that incidental is mandatory, is not in my hands, and they knew we would charge incidental if somebody damage. You will get incidental back depending at check-out. That is the policy we have here. They refused.
>
> So many times they say, well – I need assistance from the police.
>
> Q. So they objected to the incidental fee; is that right?
>
> A. Yes. They said that what is fee? Answer, that is sometimes used if something happen, in case.
>
> …
>
> Q. Did the issue of a service animal ever come up or was it all about the incidental fee?
>
> A. I think incidental. They refused the incidental. If it was service animal or regular animal, incidental is mandatory for everybody. It is not related to service dog.

Patel Dep., 33:3-34:10. Up until the filing of their Motion for Summary Judgment, Defendants' story about what happened has been entirely different than what is presented in the Motion. It is apparent that Defendants have seized upon a single statement made by Plaintiff McNerney during his deposition that Defendant Patel denied a pet fee was being charged and have taken

---

[2] Defendant Patel admitted in his deposition that this allegation was not true and that he did not actually remember either Plaintiff making that statement, but rather that this is something that he's heard other people say. Declaration of Scott J. Aldworth ("Aldworth Decl."), ¶ 2, Ex. 1 ("Patel Dep."), 49:15-50:12.

Page 3 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

that statement out of context to craft an entirely new narrative about what happened.

The actual context for Plaintiff McNerney's statement relates to a central factual dispute in this case about the type of form given to Plaintiffs. While Defendants assert that Plaintiffs were only given the Registration Form, Plaintiffs have alleged that they were given a separate pet agreement to sign that would have obligated them to pay a pet fee. First Amended Complaint, Dkt. 13, ¶ 7; Declaration of Marie Goodman ("Goodman Decl."), ¶ 4; Declaration of Eugene McNerney ("McNerney Decl."), ¶ 3; Declaration of Scott J. Aldworth ("Aldworth Decl."), ¶ 3, Ex. 2 ("Goodman Dep."), 28:10-20. While Defendants have failed to produce a pet agreement in discovery, there are substantial issues of fact about whether one exists. For example, Defendant's website listing specifically states, "A pet agreement must be signed at check-in." Aldworth Decl., ¶ 4, Ex. 3. Further, Defendant Patel explicitly testified that the hotel uses a separate pet form that outlines the rules for having animals at the hotel; however, when Defendant Patel was asked why this form was not produced, he changed his story and claimed it was the same as the Registration Form (even though the Registration Form says nothing about the rules for having an animal at the hotel):

> Q. I wanted to ask you about this section of the hotel policies under pet policy. This says there's a $10 pet fee per night, which you mentioned. And it says a pet agreement must be signed at check-in. Does this agreement go through the rules for having a pet at the hotel?
>
> A. Uh-huh. We have registration part comes from the franchisee.
>
> Q. And does it talk about, like, you can't leave the animal alone in the room, you have to pick up after your animal, things like that?
>
> A. Yes, sir. If you have animals, housekeeper go inside the room. They must be aware there is a pet inside the room.
>
> Q. Okay. And there's a form that goes through that and that the guest has to sign?
>
> A. Yes. When they check in, they have to fill out this form.
>
> Q. And that form goes through the rules for having an animal at the hotel?

Page 4 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4869-1083-3067

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

> A. Yes. It is if they have a pet, they don't have a pet or they have service animal.
>
> ….
>
> Q. Does the pet agreement that this document refers to, does that go through the rules of having a pet, like, not being able to leave it alone in the room, having to clean up after it, things like that?
>
> A. Yes, sir. We have that forms. ***And that is form separate from the registration form***.
>
> Q. Okay. Now, we haven't received a copy of that form. Do you know why that wasn't produced to us?
>
> A. That is the form, which is like the ones they check in, so they – that is not mentioned there, but it's the same form.

Patel Dep., 20:3-21:19 (emphasis added). Finally, it is significant that Defendants have not submitted (or produced in discovery) a Registration Form for Plaintiffs. As shown on the Registration Form for a different guest that Defendants submitted, the guest information is typed into the top portion, the form is printed out, and then the guest handwrites in their initials and signature. Exhibit 4 to the Declaration of Ashraf Ahmed. If the dispute arose when Plaintiffs were reviewing their Registration Form, as Defendants contend, there would be a Registration Form with Plaintiffs' information at the top. Because such a form does not appear to exist, and because there is evidence that Defendants utilize a separate pet agreement, there is a disputed issue of fact about whether Plaintiffs were given a Registration Form, as Defendants contend, or were given a separate pet agreement to sign that would have obligated them to pay a pet fee, as Plaintiffs contend.

With respect to Plaintiff McNerney's testimony, it was not that Defendant Patel assured Plaintiffs that they would be exempted from the pet fee, as Defendants assert. Rather, it was that Defendant Patel claimed a pet fee was not being charged while requiring Plaintiffs to sign a pet agreement that would have obligated them to pay the fee. Plaintiff McNerney testified that he explicitly pushed back on Defendant Patel's denial because it was contradicted by the paperwork they were being required to sign and that this pushback is what led to Defendant Patel calling the

Page 5 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

police:

> And Marie noticed we were getting charged for the pet fee and she mentioned this to the employee. And he – he – said no, we weren't being charged. And she said yes, and she was – she was reading the paperwork and – and pointing at it. And then he was having a hard time understanding her, I think, and so, what she typically does is she – she takes out her phone and she has a text that she'll write to folks and – and she'll hold the phone up and – so they can read her text. Right?
>
> And so he – he was ignoring her – her text and he was becoming – becoming angry and hostile and aggressive, and so I – so I stepped in to interpret for her.
>
> I said – I said, "We're being charged for the pet fee and they're service dogs and we have – we have the identification. And so we're – we're not supposed to get charged for the – for the service dogs."
>
> And he became – he turned his aggression towards me, and I was reading the – I was reading the paperwork where we were being charged with my finger, and he came at me and slapped my hand, like, a quick little slap. It was unbelievable.
>
> So at that point, I said, "We need a refund. We're not going to stay here."
>
> And he – he said, "You guys" – he said, "You guys need to leave. I'm going to call the police."

Aldworth Decl., ¶ 5, Ex. 4 ("McNerney Dep."), 18:16-19:23. He also made clear later in his deposition that Defendant Patel was attempting to charge a pet fee:

> Q. How do you – what kind of an effect did the confrontation with the employee at the Days Inn have on Ms. Goodman?
>
> A. Well, she was scared as well, and she feels like, you know, because she's deaf, that he was using that as a way to take advantage of her and make money off of her. And she feels like, you know, she was – she was aggressed and she was taken advantage of.
>
> Q. So she didn't pay anything. And when she asked if there was a pet fee, he said no, there wasn't a pet fee, and then she asked for a refund, and you all got a refund and left. What – what was the "taken advantage of" part, if you understand?
>
> A. No. He – he wasn't – he wasn't refunding her pet fee. He was trying to charge us for the pet fee and the hotel. And he threatened

Page 6 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

4869-1083-3067

> the – he threatened to call the police and wanted us to leave. So that's being taken advantage of.
>
> Q. Okay. ***So he was trying to actively get you to pay for the pet fee?***
>
> A. ***Yeah.***

*Id*., 36:12-37:9 (emphasis added). Defendants have taken Plaintiff McNerney's testimony out of context to focus exclusively on the statement that Defendant Patel denied charging a pet fee. The full context of the testimony shows that Plaintiff McNerney testified that Defendant Patel's claim was contradicted by the paperwork they were required to sign and, when this was pointed out to Defendant Patel, he told Plaintiffs he was calling the police on them.

Further, with respect to Plaintiff Goodman, she testified that Defendant Patel explicitly told her that she needed to pay a pet fee for her service animal:

> Q. What's the closest you remember to the exact words you told him about your concerns regarding a pet fee?
>
> A. I said, "This is not a pet. It's a service dog for my disability."
>
> He said, "It doesn't matter. You have to pay the pet fee."
>
> I said, "Do you know what the ADA law is?" And he continued to argue.
>
> I explained what the ADA was, the Americans with Disability Act law, that said you can't charge a fee for a service dog, and then he became more hostile.

Goodman Dep., 37:9-21. Plaintiff Goodman does not recall Defendant Patel ever denying that Plaintiffs were being charged a pet fee; to the contrary, he specifically told her that the pet fee was required. Goodman Decl., ¶ 8. When she explained that this was illegal, Defendant Patel became increasingly hostile and told Plaintiffs they needed to leave the hotel. *Id*., ¶ 7. Plaintiff Goodman told Defendant Patel that they would not leave until they were given a refund and then contacted Expedia. *Id*. Her real-time messages with an agent from Expedia show that she told him that Defendant Patel "violated the ADA law" and "is not allowing me to stay at [the] hotel because of my service dog." Goodman Decl., ¶ 9, Ex. 1. The messages describe Defendant

Page 7 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Patel continuing to yell at Plaintiffs and then calling the police on them. *Id*. Once Expedia processed the refund, Plaintiffs left the hotel. Goodman Decl., ¶ 10.

There are substantial issues of fact that go to the heart of Plaintiff Goodman's claim. For the reasons discussed below, summary judgment must be denied.

### **Legal Standard**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden to present the portions of the record that demonstrate there is no issue of material fact. *Celotex Corp. v. Cartett,* 477 U.S. 317, 323 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 (1970) (the moving party must first meet the burden of showing the absence of a genuine issue of material fact). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are disputed facts whose resolution will affect the outcome of the suit under substantive law. *Id.* The non-moving party must present specific facts in order to establish a genuine issue of material fact. *In re Agr. Research and Tech. Grp., Inc.*, 916 F.2d 528, 536 (9th Cir. 1990), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a motion for summary judgment the court must "not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). The court must view evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982).

### **Argument**

Defendants have moved for summary judgment on Plaintiff Goodman's claim against Defendant Coolvestment for violation of RCW 49.60.030. Defendants' contention that there are no genuine issues of material fact is ludicrous. Defendants' entire motion is based on the premise that it is undisputed that they did not attempt to charge a pet fee to Plaintiffs. Whether

Page 8 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
    SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

Defendants attempted to charge a pet fee, however, is very much in dispute.

As Defendants acknowledge, Washington law makes it unlawful for places of public accommodation, such as the hotel operated by Defendant Coolvestment, to "to restrict, condition, prohibit, or interfere with or…exclude any person or persons from any business relationship on the basis of…the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.030(1)(f). The regulations implementing this statute specify that this includes "requir[ing] a disabled person accompanied by a trained dog guide or service animal…to pay an extra charge for the trained dog guide or service animal." WAC 162-26-070(3). As Defendants also acknowledge, Washington's anti-discrimination law parallels the federal Americans with Disabilities Act ("ADA") and the ADA is instructive in interpreting the Washington law. *Grill v. Costco Wholesale Corp.*, 312 F. Supp. 2d 1349, 1354 (W.D. Wash. 2004). The regulations implementing the ADA specify that a place of public accommodation may "not ask or require an individual with a disability to pay a surcharge, even if people accompanied by pets are required to pay fees, or to comply with other requirements generally not applicable to people without pets." 28 C.F.R. § 35.136(h).

There is no question that the law prohibits Defendant Coolvestment from charging a pet fee to guests who use service animals. Whether or not that happened here is a disputed question of fact that cannot be resolved on summary judgment and must be answered by a jury. Defendants' Motion relies entirely on a narrative crafted out of a single out-of-context statement made by Plaintiff McNerney at his deposition.[3] Notably, Defendants do not rely on any statement from Defendant Patel to support its position that he denied the pet fee referenced on the Registration Form would be charged to Plaintiffs. Defendants cannot do so because it would

---

[3] Defendants also appear to rely on Defendant Coolvestment's purported policy of not charging a pet fee for service animals. Obviously, the existence of a policy prohibiting discrimination is not a sufficient basis for granting summary judgment; if that were the case, nearly every employment discrimination case would dismissed on summary judgment because most employers have a policy prohibiting workplace discrimination. Whether or not Defendant Coolvestment actually acted in accordance with its purported policy is a question of fact.

Page 9 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
         SUMMARY JUDGMENT

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

4869-1083-3067

directly contradict Defendant Patel's own deposition testimony and Defendants' pleadings in this case, which claimed that the dispute between Plaintiffs and Defendant Patel was solely related to the incidental deposit charged by the hotel. This discrepancy and Defendants' shifting narrative about what occurred is alone sufficient to create genuine issues of material fact that preclude summary judgment.

With respect to Defendant McNerney's testimony, the full context shows that he pushed back on Defendant Patel's statement that a pet fee was not being charged because it was contradicted by the form they were being asked to sign. McNerney Dec., 18:19-19:12. Whether that form was the Registration Form or a separate pet agreement is also a genuine issue of material fact. While Defendants have not produced a pet agreement, Plaintiffs recall that the form was specific to pets, Defendants' website states that guests are required to sign a pet agreement, and Defendant Patel testified that the hotel uses an agreement separate from the Registration Form that describes the rules for having an animal at the hotel. Goodman Decl., ¶¶ 4-5; McNerney Decl., ¶ 3; Aldworth Decl., ¶ 4, Ex. 3; Patel Dep., 20:3-21:19. Defendants have also not produced a Registration Form for Plaintiffs, which would exist if it had been printed out and given to Plaintiffs to sign. Given this, whether Plaintiffs were asked to sign a pet agreement that would have obligated them to pay a pet fee is a genuine issue of material fact that precludes summary judgment.

Finally, Plaintiff Goodman testified that Defendant Patel explicitly told her that a pet fee was required for her dog even though it was a service animal. Goodman Dep., 37:9-21.[4] Defendants appear to take the position that Plaintiffs' claim fails because they never actually paid a pet fee. Again, Plaintiff Goodman's testimony was that Defendant Patel told her that a pet fee was required for her service dog and, when she told him that was illegal, he became hostile,

---

[4] Plaintiff Goodman also does not recall Defendant Patel ever denying that a pet fee was being charged. Goodman Decl., ¶ 8. Even if the Court were to accept Defendants' out-of-context framing of Plaintiff McNerney's testimony, this disagreement is sufficient to create genuine issues of material fact with respect to Plaintiff Goodman's claims.

Page 10 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
 SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

kicked Plaintiffs out of the hotel, and called the police on them. *Id*.; Goodman Dep., 40:20-41:4. The idea that Plaintiff Goodman would have needed to acquiesce and pay the pet fee in order to have a discrimination claim under these circumstances is ludicrous. For purposes of summary judgment, the Court must view all evidence in the light most favorable to Plaintiffs. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). If a jury believes Plaintiff Goodman's testimony, there is no question it could rule in her favor and, as a result, summary judgment must be denied.

This case involves several factual questions that are highly disputed and quintessential he-said/she-said disagreements that can only be resolved by a jury. Defendants' Motion has no basis in the law or facts of this case and is a waste of the Court's time and resources. Summary judgment is wholly inappropriate and Defendants' Motion must be denied.

## Conclusion

For the reasons described herein, Defendants' Motion should be denied.

*I certify that this response contains 3,601 words, in compliance with the Local Civil Rules.*

DATED this 15th day of March, 2024.

           KELL, ALTERMAN & RUNSTEIN, L.L.P.


      s/ Scott J. Aldworth
**SCOTT J. ALDWORTH**, WSBA No. 60949
saldworth@kelrun.com
**ZACHARY WALKER**, WSBA No.46049
zwalker@kelrun.com
520 SW Yamhill, Suite 600
Portland, OR 97204
Telephone: 503/222-3531
Fax: 503/227-2980
Attorneys for Plaintiffs

Page 11 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
      SUMMARY JUDGMENT

KELL, ALTERMAN & RUNSTEIN, L.L.P.
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980

4869-1083-3067

# CERTIFICATE OF SERVICE

I certify that I caused to be served a true and correct copy of the foregoing PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on the following recipients:

>Anthony D. Kuchulis
>Littler Mendelson, P.C.
>1300 SW 5th Avenue
>Wells Fargo Tower, Suite 2050
>Portland, OR 97201
>akuchulis@littler.com

by electronic mail.

DATED this 15th day of March, 2024.

KELL, ALTERMAN & RUNSTEIN, L.L.P.

s/ Scott J. Aldworth
**SCOTT J. ALDWORTH**, WSBA No. 60949
saldworth@kelrun.com
**ZACHARY WALKER**, WSBA No.46049
zwalker@kelrun.com
KELL, ALTERMAN & RUNSTEIN, L.L.P.
520 SW Yamhill, Suite 600
Portland, OR 97204
Telephone: 503/222-3531
Fax: 503/227-2980
Attorneys for Plaintiffs

Page 12 – PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4869-1083-3067

**KELL, ALTERMAN & RUNSTEIN, L.L.P.**
ATTORNEYS AT LAW
520 SW YAMHILL, SUITE 600
PORTLAND, OR 97204
TELEPHONE (503) 222-3531
FACSIMILE (503) 227-2980